UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Paul R. Burgett,

6:13-CV-1358-TC

Plaintiff,

v.

FINDINGS & RECOMMENDATION

SEAN SANBORN, JANIS BLUE, and the
CITY Of COQUILLE,   a political subdivision
of the State of Oregon,

Defendants.

COFFIN, Magistrate Judge:

This action arises out of the traffic stop and subsequent arrest of plaintiff for DUII.  Plaintiff

asserts  a Fourth Amendment claim for unreasonable seizure and a claim under Oregon law for

malicious prosecution.

Presently before the court is  defendants' motion (#37) for summary judgment.[1]  For the reasons

stated below, this action should be dismissed.

---

[1]Original Defendant City of Coquille Police Chief  Janice Blue has been voluntarily
dismissed from this action.  Order (#55).

Page 1 - FINDINGS & RECOMMENDATION

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Background Facts

On the night of August 6, 2011, defendant Officer Sanborn had his headlights illuminated in a parking lot and was moving and about to enter the traffic lane from a driveway intersecting the roadway. Sanborn states that he then observed plaintiff Burgett drive towards him with his high beams on. Officer Sanborn pulled out of the driveway intersecting the road and followed plaintiff's car. Sanborn states he observed plaintiff not dimming his high beams for an oncoming vehicle, and that after the oncoming vehicle flashed its high-beams, plaintiff dimmed his headlights. Based on these observations, Sanborn states that he then stopped plaintiff for the traffic violation of failing to dim his headlights, ORS 811.515, ORS 811.520.

Sanborn states that he noticed an odor of alcohol emanating from plaintiff while Sanborn spoke with him. Sanborn asked plaintiff if he had been drinking and plaintiff responded that he had a drink or two and later said that he had a glass of whiskey several hours earlier and two glasses of wine a few hours earlier. Sanborn had to ask plaintiff to remove his license from his wallet after plaintiff gave him the entire wallet.

Sanborn returned to his cruiser, ran the license, and confirmed his thought that plaintiff was the former Coos County District Attorney. Sanborn contacted Chief of Police Blue who advised Sanborn to treat plaintiff as he would treat any other DUII suspect. Sanborn stayed at his cruiser until a cover officer arrived.

Sanborn then asked plaintiff if he was willing to perform field sobriety tests (FSTs). Plaintiff claimed he was fine to drive and refused to perform FSTs initially. Sanborn read him his rights and plaintiff told him that he had been the District Attorney for Coos County for many years. Sanborn responded that he was fully aware of plaintiff's identity. Plaintiff then told Sanborn that Sanborn

was an "amazing idiot, " to which Sanborn replied, "I appreciate that sir," and plaintiff responded, "I'm sure you don't."

Sanborn performed a horizontal gaze nytugmus test on Burgett with a flashlight and pen which indicated 4 out of the 6 validated clues to impairment.

As for the FSTs , a video recording of the stop shot from the dashboard of Sanborn's cruiser shows that plaintiff failed the walk and turn test and badly failed the one leg stand test. Plaintiff admits he lost his balance during testing. He now attributes that to a hip replacement and an achilles tendonitis problem.   Plaintiff had told Sanborn that he had a pinched nerve in his neck and that it caused him pain in his neck and back, and made his arm feel numb.

After the FSTs, plaintiff was handcuffed and taken to the jail where his Blood Alcohol Content (BAC) was measured at .04% at the time of testing.

The Coos County District Attorney ultimately decided to not prosecute the DUII case.  Plaintiff was later acquitted in Coos County Circuit Court on the traffic charge of failure to dim lights.

### Discussion

I. §1983 Claims against Officer Sanborn  and City of Coquille

In plaintiff's Fourth Amendment claim, plaintiff alleges that defendants Sanborn and the City of Coquille are liable for an unreasonable seizure and because of the  practices and policies of the City of Coquille . Such claims  fail.

Plaintiff initially notes the opinions expressed by an  "Assistant Attorney General [2]  and by

_____

[2]The Assistant Attorney General was a Senior Assistant Attorney General with the Oregon Department of Justice who did an investigation of this matter for the Coos County District Attorney.

Page 4 - FINDINGS & RECOMMENDATION

plaintiff's former defense counsel that Officer Sanborn had probable cause to arrest the plaintiff even if there was not evidence which could have led to a conviction." P. 11 of Corrected Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (#59); Deposition Exh. 3 to Exh A of Warren Declaration ( # 41). Plaintiff then argues that those opinions rest on two false premises: 1) that plaintiff did fail to dim his headlights for an oncoming car; and 2) that the plaintiff failed FSTs. P. 11 of Corrected Memo in Opposition.


The Stop

Plaintiff contends that the affidavit of his accident reconstruction expert Michael Stupfel proves "conclusively" that the plaintiff did not commit the violation of failure to dim his headlights for an oncoming car within 500 feet. Plaintiff argues that there is a genuine issue of material fact whether Sanborn intentionally and knowingly conducted an unreasonable seizure based on a fiction. Id. at 12.

Expert Stupfel opines that plaintiff's "headlights were dimmed while the oncoming vehicle was significantly more than 500 feet distant from the Burgett vehicle" and that " Officer Sanborn could not have observed Mr. Burgett commit the offense of failure to dim his headlights ..." P. 2 of Stupfel Affidavit (#53). The evidence Stupfel largely bases his calculation and conclusions on are plaintiff's testimony and a video recording of the stop shot from the dashboard of Sanborn's cruiser.

As to the testimony relied on, Stupfel states that plaintiff's testimony was that when the oncoming vehicle became visible, it immediately "flashed" its headlights bright, and plaintiff, immediately, within one second, dimmed his headlights. Id. at p. 3. This appears to be loosely based on plaintiff's deposition testimony where plaintiff said he saw a vehicle come that flashed him

and he dimmed. P. 23 of Exh A to Warren Declaration (#40).    Stupfel omitted the next part of the

deposition testimony where plaintiff said that the dimming was  just prior to the traffic stop.  Id.

Plaintiff signed an affidavit on March 13, 2015 which was  subsequent to his deposition.  In the

subsequent affidavit, plaintiff states he testified at deposition that he never saw an oncoming car ,

and it  might have been the police officer turning on headlights.  P. 3 of Burgett Affidavit (#51).

In the Affidavit, plaintiff maintains he dimmed his lights only once, for Officer Sanborn due to the

sudden illumination of Sanborn's lights or due to Sanborn's lights suddenly being pointed at him[3],

and that plaintiff's  lights remained dimmed for all other vehicles.  Id.

The video Stupfel relies on indicates plaintiff encountered four vehicles -  the police cruiser

pointed towards plaintiff, and three cars in the opposing lane of traffic.  Officer Sanborn told

plaintiff that plaintiff had his brights on for Sanborn and other drivers.  This would be consistent

with plaintiff's actual deposition testimony where plaintiff said he saw a vehicle come that flashed

him and he dimmed just prior to the traffic stop.  Stupfel's report did not specifically consider this

part of the deposition testimony regarding timing and focuses on the vehicle 27 seconds into the

video, not the vehicle 58 seconds into the video which was just prior to the traffic stop.  As such,

contrary to plaintiff's position, the expert affidavit does not "conclusively" indicate that plaintiff did

not commit the traffic violation.

In addition, a party cannot create a genuine issue of material fact for summary judgment purposes

by submitting an affidavit that contradicts prior sworn testimony, without some adequate explanation

for the reasons for the obvious contradictions.  Radobenko v. Automated Equip. Corp., 520 F2d 540,

---

[3]The video indicates Officer Sanborn had his headlights illuminated in a parking lot and was
moving and about to enter the  traffic lane from a driveway intersecting the roadway.

Page 6 - FINDINGS & RECOMMENDATION

544 (9th Cir 1975). "If a party who was examined at length in depositions can raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Kennedy v. Allied Mutual Ins., 952 F.2d 262, 266 (9th Cir. 1991)(citation and internal quotations omitted). Plaintiff has not provided a persuasive and adequate explanation for the contradictions.    Sanborn states that he observed that plaintiff did not dim his high beams for an oncoming vehicle, and that after the oncoming vehicle flashed its high-beams, plaintiff dimmed his headlights. Sanborn's statements in his Deposition and his Declaration are consistent on this matter. Deposition, p.p. 26, 28 of #60-3, and his Declaration, p.2 of #38.

As shown above, plaintiff's argument that a reasonable jury can find that Sanborn's allegations were knowingly false and that he had no reasonable suspicion to stop plaintiff's car is not persuasive. However, even if there was an arguable issue on the reasonable suspicion itself, the qualified immunity standard gives law enforcement officers ample room for mistakes of fact and law and can be applied here. As stated in Wilkens v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003), "[e]ven if his action did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity."

In addition to the aforementioned problems with plaintiff's reliance on expert Stupfel, Stupfel tries to show that there was more than 500 feet between an oncoming car and plaintiff's car when he dimmed his bright lights. ¶ 3 of Stupfel Affidavit. The calculations rely upon speeds either at, or below, the speed limit for both plaintiff's car and the oncoming car, and there is nothing to support that premise. Vehicles routinely drive at or a little above the posted speed limit. Also, as stated above, plaintiff's expert only reviewed vehicles that passed plaintiff earlier in the video.

Page 7 - FINDINGS & RECOMMENDATION

Stupfel looked at vehicles at 27 seconds and not 58 seconds into the video.  And  the standard for a traffic stop is one of reasonable suspicion only;  it is not one of beyond a reasonable doubt. Sanborn is not expected to perform mathematical calculations in his patrol car.  At most , Sanborn may have made a reasonable mistake of fact as to the difference between two moving vehicles at night.  Regardless, he is still entitled to qualified immunity.

Plaintiff's assertions of Sanborn's alleged intentional wrongdoing and the effect of such assertions on reasonable suspicion, probable cause,  and liability are discussed in the next section.


The Arrest

Officer Sanborn had probable cause to arrest plaintiff.  Probable cause exists when, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime.  Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003).

Officer Sanborn knew plaintiff admitted drinking, smelled of alcohol, had to be asked to remove his license from his wallet, indicated 4 out of the 6 validated clues to impairment on the horizontal gaze nytugmus (HGN) test, failed the walk and turn test and badly failed the one leg stand test. [4] Based on this, a prudent person would have concluded that there was a fair probability that plaintiff had committed the crime of DUII.

Plaintiff argues that the report of his second expert, Schreirer,  raises genuine issues of material fact on this matter.  Such argument is not persuasive.

---

[4]In addition, but not needed for the conclusion of the existence of probable cause , Sanborn believed  plaintiff had committed a moving traffic violation.

Expert Schreirer notes that the HGN test was administered properly. He also notes that the four clues of HGN would be consistent with a BAC result of .04% . P. 6 of Schreier Affidavit (#54). But he does not deny it also could be consistent with a .08 or higher BAC in a high percentage of cases as defendant has shown. In addition, the HGN test is an admissible test for the purpose of showing impairment, but is not designed to show or be admitted for BAC.

As for the FSTs, plaintiff admits he lost his balance. The video shows that plaintiff failed the walk and turn test and badly failed the one leg stand test . He now attributes that to a hip replacement and achilles tendonitis problem. Plaintiff's wife said that she conveyed this information to Sanborn who told her to step back as he did the investigation.    Schreiner himself notes that Sanborn may not have known the information at the time of testing.    Moreover, Sanborn specifically told plaintiff's wife he would ask Burgett about his medical issues as part of the FSTs and he did. Plaintiff would naturally be in the best position to describe his physical condition, and especially how he is feeling at that particular time, not how he was feeling on some prior occasion when he shared that information with his wife. Plaintiff did not inform Sanborn of his impairments that he now contends caused him to fail the FSTs. If his alleged impairments were as important as he now stresses, he should have informed Sanborn at the time but he did not. Regardless of why plaintiff failed the FSTs, his failure supported probable cause to arrest him.

Defendant demonstrates that the place of the walk and stand test does not affect the probable cause analysis in this action, and the video demonstrates plaintiff was given the opportunity to choose the place for the one leg stand test. See also, Briggs v. Holsapple , 2009 WL 395134, *5 (D. Or. 2009)(rejecting expert Schreiner's opinion that probable cause did not exist and noting gravel and incline where FSTs administered not complained about at the time of testing).

Page 9 - FINDINGS & RECOMMENDATION

In <u>Briggs</u>, Judge King agreed there was probable cause for a DUII arrest, or alternatively, at least qualified immunity, when plaintiff was speeding, had a 0.00 % BAC, passed the HGN test, and may have passed another FST, but failed the walk and turn test. As stated previously, plaintiff here failed more than one test, as plainly seen on the video. Plaintiff also measured a .04% BAC after his arrest at the time of testing.

Probable cause is determined at the time of arrest and the fact that .04 % is below the level where impairment is <u>presumed</u> does not negate the probable cause for the arrest. Nor does an arrest without successful prosecution.

Moreover, even if there was an arguable issue on probable cause, the qualified immunity standard gives law enforcement officers ample room for mistakes of fact and law and can be applied here. As stated in <u>Wilkens v. City of Oakland</u>, 350 F.3d 949, 955 (9th Cir. 2003), "[e]ven if his action did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity."

Plaintiff attempts to show that Sanborn acted improperly and concocted a fictional vehicle to justify the stop. P. 9, 11-12 of Corrected Memo (#59). Plaintiff attempts to indicate the motive for this theory is that Sanborn would improperly receive extra pay from a federal grant for DUII investigation and enforcement. Plaintiff states that:

> [i]t is undisputed that Sanborn falsely claimed that he arrested plaintiff on August 7, 2011, in order to 'justify' his claim for some portion of a bonus of $560 over his normal compensation for regular or overtime hours, paid by the taxpayers! There is no possible dispute that this arrest was **not** made on a date that would qualify Sanborn's work hours for any part of that bonus. His willingness to cheat the public for unearned pay for this very seizure, is very persuasive impeachment of all his testimony and records.

P. 13 of Plaintiff's Corrected Memo in Opposition (#59) (emphasis in original). Plaintiff does not

Page 10 - FINDINGS & RECOMMENDATION

provide cites for the foregoing statements.

At page 9 of his Corrected Memo, plaintiff states "Sanborn reported the arrest of plaintiff as having occurred on August 7, and entered that arrest date on the statistical data for the premium pay. (Sanborn depo pg 14, Force dec. Exh C pg 10, exhibit 7)."

The provided cites do not support the aforementioned statements. More than a light perusal by this court of plaintiff's original documents and corrected documents do not support these statements either. Defendants' Reply also noted that plaintiff's submissions necessitated needless searches for alleged sources . As stated in Naciemento Water Company, Inc. V. International Fidelity Insurance Company , 2015 WL 1275451 (C.D. Calif. 2015):

> It is not the court's task to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court 'need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in opposition papers with adequate references so that it can be conveniently found.' Id.

Use of federal grants by officers and municipalities for DUII investigation and enforcement is not unusual or improper. Plaintiff has not adequately demonstrated a genuine issue of material fact arising from such and plaintiff has not established the existence of all facts material to a claim in connection with this.

Moreover, even if something could be garnered from plaintiff's allegations, there would not be liability in the circumstances of this action. Plaintiff's contentions of self-interest by Sanborn do not affect the probable cause (and the earlier reasonable suspicion) determination. See, Whren v. United States, 517 U.S 806, 813 (1996) (given the objective existence of probable cause, even

if the stop and arrest were pretextual that would not violate the Fourth Amendment); John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008) ("[p]robable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes"); Devenpeck v. Alford, 543 U.S. 146, 153 (2004) ( cases make clear that arresting officers's state of mind is irrelevant, except for the facts that he knows ; question is whether circumstances viewed objectively justify the action); McKay v. Morris, 438 Fed. Appx. 631, 633 (9th Cir. 2011) (mere allegations of malice do not overcome the objective existence of probable cause).

Sanborn is not liable because of qualified immunity or because of the existence of probable cause and reasonable suspicion.

City of Coquille

Plaintiffs' claims against the City are murky.    The claims appear to be related to the previously discussed seizure, the previously discussed federal grants, and a press release related to plaintiff's arrest.

As set forth in the previous sections, there was not an underlying constitutional violation and, as such, any claims against the City fail. An adequate showing by plaintiff of anything that could lead to municipal liability is lacking.

Moreover, a municipality cannot be held liable under §1983 on a respondeat superior theory. Monell v. Dep't of Soc. Serv., 436 U.S. 658 , 691 (1978).   Liability may attach to a municipality only where the municipality causes the violation through "execution of a government policy or

Page 12 - FINDINGS & RECOMMENDATION

custom whether made by lawmakers or by those whose edicts or acts may be fairly said to represent official policy." Monell v. Dep't of Soc. Serv., 436 U.S. at 694 . And liability only attaches where a municipality's policy or customs shows a "deliberate indifference" to the constitutional right and are the "moving force behind the constitutional violation."

Plaintiff fails to adequately show a constitutional violation and plaintiff fails to adequately point out a City policy or custom that shows a deliberate indifference to a constitutional right and that is the moving force behind a constitutional violation.

II. State Claims

This court declines to exercise supplemental jurisdiction over the remaining state-law claims as all federal claims have been dismissed. 28 U.S.C §1367 (c)(3); Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal- law claims are eliminated before trial, the balance of factors ... will point towards declining to exercise jurisdiction over the remaining state-law claims'" (citation omitted)).    This court has not invested its judicial energies on the state claims to such an extent that would justify retaining jurisdiction. Nor is it apparent that judicial economy would be served by retaining jurisdiction over this case. Although it might be more convenient for defendant if the court retained jurisdiction, fairness and comity would be served by declining jurisdiction.

Page 13 - FINDINGS & RECOMMENDATION

## Conclusion

Defendants' motion (#37) for summary judgment should be allowed to the extent the federal

claims should be dismissed. The court should decline to exercise supplemental jurisdiction over

the state claim. This action should be dismissed.


DATED this  14  day of May , 2015 .


_____

THOMAS M. COFFIN

United States Magistrate Judge